IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SHIRE LLC, et al,**
    **Plaintiffs,**

v.                                                  Civil Action No 1:11cv55 and 201

**MYLAN PHARMACEUTICALS INC.**
**et al,**
    **Defendants.**

## ORDER/OPINION

On November 27, 2012, Plaintiffs filed a Motion for Protective Order and/or to Quash Subpoena for the Production of Documents [ DE 158] as well as Objections to Defendant Mylan's Subpoena to Produce Documents [DE 159]. On December 11, 2012, Defendants filed their Opposition to the Motion [DE 166]. On December 18, 2012, Plaintiffs filed a Reply [DE 167]. On December 21, 2012, Defendants filed a Motion for Leave to File a Surreply Brief [DE 168]. On December 27, 2012, Plaintiffs filed their Opposition to Mylan's Motion for Leave to File a Surr-Reply [DE 170]. On January 3, 2013, Defendants filed a "Reply in Support of its Motion for Leave to File a Surreply" [DE 171].

As a threshold matter, the Court **DENIES** Defendants' Motion for Leave to File a Surreply Brief [DE 168].

Defendants served a subpoena for the production of documents on Plaintiff Shire on November 13, 2012. The subpoena requested "all written reports, disclosures, opinions, declarations and/or validity of the Patents-in-Suit in connection with Shire LLC et al. v. Teva Pharmaceuticals USA . . ., including all expert witness reports submitted pursuant to Rule 26 . . . .;" "all documents, communications and things relating to any written reports, disclosures, opinions, declarations or affidavits submitted by any expert or consultant retained by Shire regarding the

infringement and/or validity of the Patents-in-Suit in connection with Shire LLC et al. v. Teva Pharmaceuticals USA . . . .;" and "all documents, communications and things relating to any deposition testimony given by any expert or consultant retained by Shire regarding the infringement and/or validity of the Patents-in-Suit in connection with Shire LLC et al. v. Teva Pharmaceuticals USA . . . Including deposition transcripts and accompanying exhibits."  The subpoena issued from the Eastern District of Kentucky.

Fed.R.Civ.P. 45(c)(3) provides only for the issuing court (in this case the Eastern District of Kentucky) to quash or modify a subpoena.  See, e.g., In re C.R. Bard, Inc. Pelvic Repair Systems Products Liability, - - - F.R.D. - - -, 2012 WL 6624770 (S.D.W.Va. 2012); Buyer's Direct Inc. v. Belk, Inc.,  2011 WL 6749828 at fn 2(E.D.N.C. 2011); Hodnett v. Smurfit-Stone Container Enterprises, Inc., 2010 WL 3522497 (W.D. La. 2010)("As this court is not the issuing court, it follows therefore, that it lacks authority to act upon [the motions to quash and for other relief regarding] the subpoenas."); Multiquip, Inc. v. Water Management Systems LLC., 2009 WL 5322946 (D. Idaho 2009)("Therefore, pursuant to FRCP 45, this Court may not quash or modify a subpoena issued by another court.  Because the subpoena . . . was issued by the District of Minnesota, Defendant's Motion – filed in this Court – is procedurally flawed."; Assoc. of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd., 2008 WL 2944671 (E.D.Tex. 2008)(holding that Rule 45 deprived court of authority to act on motions to quash and for a protective order relating to subpoenas issued out of other districts.)

Although the above cases are not precedential in this District, the Court finds them, especially in concert with Rule 45, persuasive, and **DENIES** the motion insofar as it requests the

2

subpoena be quashed.[1]

In making this observation, this court expresses no opinion as to whether District Court in Kentucky will or should require the production of the documents sought by Defendants.

In the alternative Plaintiffs argue that their motion is properly brought before this court for a protective order pursuant to Fed.R.Civ.P. 26(c), which provides, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, <u>for good cause</u>, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including one or more of the following: . . . .

[emphasis added].

It is settled that "[i]n order to establish good cause, a proponent may not rely upon "stereotyped and conclusory statements," but must present a "particular and specific demonstration of fact," as to why a protective order should issue. Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2035 (1994) (citations omitted) [hereinafter Wright & Miller]; 10 Fed. Proc., L.Ed. § 26:181 (last updated June 2006) (citations omitted). <u>See</u> <u>also</u> <u>Merit Industries, Inc. v. Feuer</u>, 201 F.R.D. 382 (E.D.Pa. 2001) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing."); <u>Medlin v. Andrew</u>, 113 F.R.D. 650 (M.D.N.C.1987) (burden of demonstrating good cause is a heavy one) (citation omitted). He must demonstrate that the discovery sought lacks relevance "to the extent that the likelihood and severity of the harm or injury caused by the deposition outweighs any need for the information." <u>UAI</u>

---

[1] Similarly, Plaintiffs' Objections to the subpoena [DE 159] are pursuant to Rule 45, and are also to be resolved by the issuing court, if Defendants file a motion to compel in that court.

Technology, Inc. v. Valutech, Inc., 122 F.R.D. 188 (M.D.N.C. 1988)(defining relevant information broadly as any matter that bears on or could bear on "any issue that is or may be in the case")(quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)); 10 Fed. Proc., L.Ed. Section 26:191 (last updated June 2006)(citations omitted)." Baron Financial Corp. v. Natanzon, 240 F.R.D. 200 (D. Md. 2006.)"

"Although its good cause requirement creates a rather high hurdle for proponents, Rule 26(c) 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" Furlow v. U.S., 55 F.Supp.2d 360 (D.Md.1999)(quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)); Wright & Miller section 2036 (citations omitted). Nonetheless, protective orders "should be sparingly used and cautiously granted." Medlin, supra, 113 F.R.D. at 652.

Plaintiffs argue they should be protected from the subpoena for three reasons: 1) the subpoena is Defendants' attempt to avoid this Court's previous Order; 2) the subpoena is a violation of the parties' discovery agreement; and 3) the subpoena is invalid on its face.

**1. This Court's Previous Order**

Plaintiffs argue that the subpoena is a "bold attempt to avoid the Court Order that denied [Defendants] access to the very same documents . . . ." Plaintiffs correctly state that the Court denied Defendants' motion to compel the expert reports it is apparently seeking through the subpoena. The Court's reasoning in doing so was well set-out. First, Defendants had not complied with Local Rule of Civil Procedure 37.02(a)(1) which requires the actual discovery request at issue to be set out in the motion to compel itself. As the Court stated in its Order granting Clarification, the basis for this denial was not substantive, but solely procedural.

Second, Plaintiffs represented there was a protective order in the litigation in which the information sought might be located. Importantly, the plaintiffs in the case in this Court are the same plaintiffs in the other litigation; only counsel is different in each case. Counsel for Shire in this case represented to the Court that they had contacted counsel for Shire in the other case, and requested permission to disclose the information:

THE COURT: Where do you stand with respect to the expert reports? You agreed to try to produce them. What efforts have you made?

MS. O'BRIEN: We did. We have done everything we can do. We have given them invalidity expert reports that did not contain confidential information. We reached out to counsel in the Delaware case. We are not counsel in the Delaware case, so we're not included under their protective order. And so we reached out to the counsel in Delaware case, and they in turn reached out to the defendants in the Delaware case. They requested the permission to disclose the defendants' confidential information and they objected. So we–

THE COURT: You understand now that the defendants' information isn't what Mylan wants; correct?

MS. O'BRIEN: Yes. Shire - -

THE COURT: Have you provided Mylan with all of Shire's expert reports? That's Shire's expert reports, redacted of any confidential information, from the formulations of the other defendants from those reports in the IMX Labs case, the Santos, Inc., case and the Teva Pharmaceuticals case?

MS. O'BRIEN: First, just to clarify, expert reports have only been filed in the Delaware case. There are no expert reports in either of the Colorado or the Northern District of California case.

THE COURT: So you can't produce what you don't have?

MS. O'BRIEN: Correct.

THE COURT: All right.

MS. O'BRIEN: We have provided the expert reports in the Delaware case that don't contain confidential information, and we discussed several times with the - - with the Delaware plaintiff's counsel getting a redacted report. They are actually - - I think they just finished trial yesterday, and so we have been working with them. But plaintiffs' counsel in this case, we aren't allowed to see the expert reports that are not redacted. So, we are - - we are relying on another counsel in an entirely separate case. So, that has had some complications, and we're doing the best we can to get them the reports.

THE COURT: How long do you thing it's going to take to resolve the problem?

MS. O'BRIEN: We don't know. They are in the middle of trial, and - -

THE COURT: I thought you just said they finished trial yesterday?

MS. O'BRIEN: Well, yes, but there are posttrial motions, so we have been communicating with plaintiff's counsel, but they won't give them to us. And we aren't allowed to see the unredacted reports in order to redact them ourselves.

6

| | |
|---|---|
| THE COURT: | I'm a little confused.  Let me go back over this.  In the - - is it the IMX Labs case or is it the Teva case that you have produced? |
| MS. O'BRIEN: | It's the Teva - - the Teva case. |
| THE COURT: | Okay, let's deal then solely with Teva.  In Teva, you have produced reports; correct? |
| MS. O'BRIEN: | We have, yes. |
| THE COURT: | Were they reports of experts that Shire hired relative to any claim Teva may have made of invalidity? |
| MS. O'BRIEN: | I think so, yes.  I produced two expert reports that didn't contain any defendants' confidential information. |
| THE COURT: | Well, you keep qualifying it – That wasn't my question.  You have supplied reports, and did they deal with invalidity? |
| MS. O'BRIEN: | Yes. |
| THE COURT: | Did the two reports that you produced also deal with infringement? |
| MS. O'BRIEN: | No. |
| THE COURT: | Is the reasons that you did not produce any - - did you produce any reports that dealt with infringement? |
| MS. O'BRIEN: | We wouldn't have produced any reports that dealt with infringement because they would be solely based on defendant's confidential information in that case.  They would be been based on Teva's formulation. |

| | |
|---|---|
| THE COURT: | And could you have redacted that information out, or do you not have those reports in hand to redact? |
| MS. O'BRIEN: | The whole report would have been based on confidential information from Teva. |
| THE COURT: | Do you even have the report, ma'am? |
| MS. O'BRIEN: | No, we don't. We have been working with counsel in the other case. |
| THE COURT: | All right, I think I now understand. With respect to infringement, you don't have access to the report as Shire's attorneys in this case. You can't get access to that report because it's in the hands of other counsel that are representing Shire in the other case. And they won't give it to you because it contains confidential information? |
| MS. O'BRIEN: | No, Your Honor, it is not that they won't give it to use, it's that they can't give it to use. We're not subject to the Court's protective order in that case. |

(Transcript of Hearing, September 21, 2012 pp. 60-63).

Based on the filings in the Motion to Compel and the above statements of counsel for Shire, the Court concluded in its previous Order that it could not compel the production of the expert reports because they were protected under a protective order of the Delaware Court, and this Court is not privy to that protective order. In its Order granting clarification, the Court expressly stated that the previous order did not decide that the expert reports were not relevant, and that the Order "did not decide that Mylan was precluded from seeking the reports at issue through other means." (Emphasis added). Further, the Court stated: "Moreover, to the extent relevance was tangentially

8

discussed during the hearing on the motion to compel, the Court notes now and noted then that <u>Shire had already agreed it was trying to get the reports at issue for Mylan</u>. Further, the Court's comment during the hearing and in the order that Mylan would be entitled to the report as part of pending expert disclosure was indicative of the court's belief that the reports could be relevant." (Emphasis added).

Finally, the Court addressed the "agreement" between the parties, stating that it "must abstain from trying to interpret an agreement and construe the rights of the parties under an agreement which is unclear at best."

On December 3, 2012, the Court, in response to a motion for clarification of its previous order, entered an order clearly stating that the previous order did not deny Defendants the relief they requested on substantive grounds. The order did not decide that the information sought was not relevant. The order did not decide that Defendants were precluded from seeking the information at issue through other means. Further, and perhaps most importantly, Plaintiffs had already agreed they were attempting to get the reports at issue for Defendants.

Upon consideration of all which, the Court finds that its previous Order [DE 154] does not preclude Defendants from seeking the information through other means. This is especially so in the face of Plaintiff's counsel's representations to the Court as well as to Defendants that they were attempting to get the information in order to provide it to Defendants, but were unable to do so, in particular because counsel was not privy to the protective order in the other case.

**2.     The Discovery Agreement**

Plaintiffs next argue that Defendants are again attempting to circumvent the parties' joint discovery agreement. The Court has already twice stated it would "abstain from trying to interpret an agreement and construe the rights of the parties under an agreement which is unclear at best." In light of the volumes of paper being expended on this one argument, the Court reconsiders its abstention. The "agreement" as docketed at 68-1 is entitled "Joint Motion to Consolidate and Proposed Order." The "Motion" is two paragraphs long. It provides only for consolidation of the two cases before this Court (1:11cv55 and 1:11cv201). Pursuant to the proposed Order, drafted by counsel for the parties and entered by the Court, Defendants are "not permitted any new document requests. Instead, Mylan is limited to documents that have been or will be produced in *Shire LLC v. Impax Labs., Inc., et al.*, C.A. No. 3:10-cv-05467-RS (N.D. Cal.), involving the same Plaintiffs, same patents-in-suit, and same product, which is currently pending in the Northern District of California . . . . The preceding limitations on fact discovery will not apply to expert discovery . . . ."

The Court finds it significant that, as represented by Plaintiffs in the above-referenced hearing "expert reports have only been filed in the Delaware case. There are no expert reports in either of the Colorado or the Northern District of California case." Therefore, at least at present, Defendants cannot get the information they seek from the *Impax Labs* case. Further, during the hearing, the Court and both parties' counsel referred to the information Defendants seek as "expert reports." The information is, therefore, at the very least, a hybrid of fact and expert discovery, and an express exception to the agreement. Finally, the Court again notes that Plaintiffs have represented both to Defendants and to this Court, that they were attempting in good faith to obtain the information to disclose it to Defendants. The Court therefore finds Defendants' request does not

10

circumvent the parties' express agreement.

**3.      Validity of the Subpoena**

   **a. Service on a party.**

Plaintiff s argue the subpoena itself is invalid on its face for two reasons: 1) it is improperly directed to a party, and 2) it is untimely under the scheduling order. Regarding the service of a subpoena on a party versus a nonparty, the Court notes that Rule 45 itself does not expressly limit subpoenas to nonparties. Nor has either party cited a Fourth Circuit case on the issue. In Mortgage Information Services, Inc. v. Kitchens, 210 F.R.D. 562 (W.D.N.C. 2002), the District Court for the Western District of North Carolina held that a Rule 45 subpoena duces tecum may properly be served on a party. Although not binding precedent in this District, the Court notes that the Western North Carolina District Court gathered holdings from a number of district courts that were split on the issue, as well as the opinions of the two arguably most-cited treatises, Wright & Millers' *Federal Practice and Procedure* and Moore's *Federal Practice*, before holding that a Rule 45 subpoena may be served on a party. The court's discussion of the issue is thorough and its holding is persuasive.

Further, counsel for Plaintiffs in this Court expressly stated they could not get the information. The Court then held it could not compel the information, but found this did not preclude Defendants from seeking the information through other means. This Court therefore finds the subpoena was proper, even though directed to a party.

   **b. Timeliness.**

Plaintiffs also argue that the subpoena is invalid due to untimeliness. Fact discovery closed in this case on July 31, 2012. Courts have generally found that Rule 45 subpoenas fit into the

definition of discovery. See Dreyer v. GACS, Inc., 204 F.R.D. 120 (N.D. Ind. 2001); Rice v. U.S., 164 F.R.D. 556 (N.D. Okl. 1995). See also Wright & Miller, 9A *Federal Practice and Procedure* section 2452 at n.2. Allowing a party to use Rule 45 to circumvent the requirements of a court-mandated discovery deadline would clearly be contrary to this approach. See Dreyer, 204 F.R.D. at 123 ("To allow a party to continue with formal discovery . . . whether in the guise of Rule 45, or any of the other discovery methods recognized by Rule 26(a)(5), after the discovery deadline unnecessarily lengthens the discovery process, and diverts the parties' attention from the post-discovery aspects of preparing a case for trial.'").

On the other hand, the Court notes that Defendants first raised the issue of the expert reports at the latest on June 19, 2012, when, in an email to Plaintiff's counsel, they asked:

> On a related note, can you please advise as to when Shire will be producing the invalidity expert reports and associated depositions transcripts from the related D. Delaware, N.D. California and D. Colorado actions? We were surprised to realize that they do not appear to have been produced . . . .
>
> If Shire is taking the position that such reports and transcripts do not need to be produced due to the discovery "streamlining" agreed to by the parties, please advise immediately so that we can meet-and-confer. Shire's withholding of such documents is improper, and if Shire refuses to produce these documents, Mylan will move to compel promptly.

[DE 124, Ex. 1].

Plaintiffs responded to the email on June 28, 2012, stating:

> While this information was not included in the categories of documents to be produced by Plaintiffs under the terms of the parties' joint discovery stipulation . . ., in the spirit of compromise and to avoid further expenditure of resources on this issue, Plaintiffs will produce the non-confidential invalidity expert reports of Michael J. Cima, Ph.D. And David Feifel, M.D., Ph.D., both dated March 28, 2012.

> Plaintiffs' outside counsel in Shire LLC v. Teva Pharmaceuticals USA, Inc., et al., No. 10-cv-239 (consolidated), which is pending in the District of Delaware, is also providing written notice to certain defendants and third parties in that case that Mylan is seeking production of certain third-party confidential information – i.e., all invalidity expert reports and associated deposition transcripts, with accompanying exhibits, submitted by the defendants - - in this action.
>
> . . . .
>
> Please note that these actions have been taken solely as a matter of courtesy to Mylan. Plaintiffs expressly dispute being under any obligation to produce the requested expert reports in this matter.

[DE 124, Ex 4].

On July 13, 2012, still within the discovery deadline, Defendants wrote to Plaintiffs to follow up on the July 9 meet and confer regarding the expert reports. According to that email, Plaintiffs agreed they would inform Defendants whether they would at least produce redacted expert reports, but had not yet heard from Plaintiffs regarding same. Further Defendants stated their determination to move to compel the reports and requested they be advised in writing if there were any issues preventing the disclosure besides third-party confidentiality.

[DE 124, Ex. 6.]

On July 17, 2012, Plaintiffs assured Defendants they were "working diligently to provide Mylan with information it has demanded, without violating Shire's existing confidentiality obligations to third parties."

[DE 124, EX.7].

On July 23, 2012, Defendants advised Plaintiffs it was the last day to file their motion to compel and offered to again meet and confer before filing same.

[DE 124 Ex. 9].

13

Also on July 23, Plaintiffs responded that they were "not refusing to produce this information. As a result, any motion to compel on this issue would be baseless. Instead . . . Plaintiffs' outside counsel in this case are still working diligently with Plaintiffs' outside counsel in the Delaware action . . . to provide these invalidity expert reports to Mylan . . . ."

[DE 124 Ex. 10].

In light of the above assurances by Plaintiff' counsel that they were working diligently to provide the information, the Court finds Plaintiffs' timeliness argument unpersuasive. Perhaps Defendants' reliance on those assurances was misplaced, but the Court finds they were diligently pursuing the information, and, after the Court's Order advising they were not precluded from pursuing other avenues, did so.

That this Court does not find the subpoena invalid is not to say that the Kentucky District Court, from which the subpoena issued, will or will not enforce it.

Upon consideration of all which, Plaintiff Shire LLC's Motion for Protective Order and/or to Quash Subpoena for the Production of Documents [DE 158] is **DENIED**.

It is so **ORDERED.**

Dated: January 14, 2013.

s/ *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE